Hybrid Servicing, Inc. Good morning, and his case in court. I'd like to start off with the subject matter jurisdiction issue, and in particular the issue that the court asked for a letter briefing on. And I think there are three principles that this court has articulated repeatedly that are dispositive of this issue. The first is that a party claiming declaratory judgment jurisdiction has the burden to establish that jurisdiction existed at the time the claim was filed and that it continues to exist throughout the litigation. The second principle is that the jurisdiction of the court depends upon the state of things at the time the action was brought. And the third is that later events may not create jurisdiction where none existed at the time of filing. So when we look at the facts of this case, we have a case filed September 16, 2011. The only basis for federal jurisdiction is a claim that there's a dispute over inventorship, and I'll address that later. Inventorship or ownership? Well, they're characterized as both, but in the briefing I believe they conceded the point that a dispute over ownership is a state law issue. So for purposes of federal jurisdiction, we're looking at a dispute over inventorship and whether there was a threat, an immediate threat that there was going to be an action brought under 35 U.S.C. 256. But if I can get back to the subject matter jurisdiction point. And what this court asked us to brief in a letter was, in the letter briefing was, does the addition of a patent claim to this case provide the court with subject matter jurisdiction? And you say no because there's no allegation of infringement at the time of the complaint, right? That's correct. Okay. So let's jump forward to the inventorship, which is where we would like to go. Okay. So why don't you tell us why you think there isn't a case for controversy over inventorship? Absolutely. And the standard is case or controversy, right? That's what we've got to look for, whether there's a case in a controversy. Yes, case or controversy. And we've made a facial challenge, so what we need to look at is does the complaint allege substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of declaratory judgment. And when we look at, in particular, an issue about inventorship, and I'm talking about the FINA oil case, that requires that, number one, the declaratory judgment plaintiff hold a recognized interest in a patent that would be adversely affected by a claim under Section 256. And number two, that another party with a right to bring an action under Section 256 has created a reasonable apprehension that it will do so. So in other words, that is an objective test. And here, what we have is, over the course of a five or six-year relationship- The reasonable apprehension language in your citing, what is that from, just so I know? That is from the FINA oil case. And what was the year on that? You know, it's a 123 Fed third, so- No, I'm just kind of, I kind of have a feeling that might have been before we were sort of struck down and said we can't use reasonable apprehension. You started out by saying there has to be a threat, there has to be a reasonable apprehension that's sued. And while the Supreme Court didn't expressly address the 256 context, I kind of think they slapped us down on that standard, and that the standard is just immediate and real controversy now. Am I wrong? I mean- Well, I think if you're referring to the metamutant case, that was the situation where there really was a level of immediacy there. There was a licensee- No, no, I'm just asking you what the standard is. What the standard is. I think- An immediate threat, where there has to be a fear of actual 256 suit, because that sort of tracks the reasonable apprehension of suit language that the Supreme Court said is not the right standard. And that's why I'm a little worried, because the case you're citing is pre-Supreme Court shooting down that standard. Yes, Your Honor, I understand that. But I think that there still has to be an immediate and real controversy- That language is- Okay, tell us why there's an inventorship case or controversy here. There's not. There's not one. The only thing that's alleged here is that at a meeting in August of 2011, he said something to the effect, that's my patent. He said something to the effect of the patent is mine, I wrote it, and I've got a copy of it on my computer. And the historical background to that, which is also alleged in the complaint, is these two party groups, if you will, were jointly funding the patent application, and they owned the patent application 50-50 for a period of time. In 2010, the Stone Eagle Group bought out the Talent Transactions Group, so that the patent entirely was the 100% ownership. Why don't the statements that he wrote it, he authored the patent, and that it is his, why is that not enough to invoke controversy over inventorship? Well, because inventorship requires that you have a contribution to the conception of the invention. If it was just, I helped write it, and it's undisputed that he did in fact help write the evidence. He says, I wrote it. Right, I wrote it. So, every patent prosecution attorney writes a patent. That doesn't make every one of them an inventor, or that they have a claim to inventorship. Is Mr. Gilman a patent attorney? No ma'am, he is not. So, I mean, I hate to be so technical about this, but under patent laws, aren't the only people who are allowed to write patent applications, patent attorneys, patent agents, or the inventor acting per se? Well, I think that people can certainly help with the drafting of it. So, I don't think... That's what he was suggesting. Not that he prosecuted it. Not that he prosecuted it. He helped explain it. He helped write it. He helped put it down in written form. And that's not disputed. But he has never made a claim that he conceived it, or that he contributed to the conception of the invention. So, simply saying, I helped write it, or I've got a copy of it on my computer, you know, isn't sufficient to say that there's a question about inventorship.     I think it's a far cry. I think it's a far cry. I think it's a far cry. I think it's a far cry. I think this language is clearly a demonstration of a potential dispute over ownership, arguably. But... I think it's... To say it's my patent? Yes. I think that that would... Could well give rise to an immediate and real controversy over ownership. What about if he said, that's my invention? Would you think if that were the language that they were claiming he used? That's my invention. If he said, I invented that and I should have been on the patent, then I think you've got      I think it's a far cry. I think it's a far cry. I think it's a far cry. I think it's a far cry. What if he said, let's try to make this fair and it will create a dispute? What if he said, that's my invention? Ah, I don't know. Ah, I don't know. That's... That's a...   A hypothetical. That's a... That's a... That's a hypothetical. And I think it would depend on more facts. How about there at the beginning. I wrote it.  It has to be a claim to a contribution to the conceding of the invention, not simply being... What are the magic words that are missing here? I'm sorry? I'm sorry? What are the magic words? I'm an inventor. I should have been on that patent as a co-inventor. And again, what we're talking about is there has to be the immediate and real issue has to be that there is a likelihood that there's going to be a Section 256 claim made. And to get to MedImmune, the situation there was, and when the court was stepping away from immediate threat, what it was dealing with was a licensee under a patent who now wanted to challenge it for invalidity, non-infringement, et cetera, but was unwilling to just simply stop paying royalties because it knew it was going to get sued. And what the court said was, well, and so it paid royalties under protest and initiated a declaratory judgment action. This court held that wasn't an immediate threat because it was still paying royalties. It hadn't breached the license agreement. And the Supreme Court said, analogizing to cases where there's basically government compulsion or government coercion, this happened to be private coercion, said, we're not going to make a licensee who believes that they can stop paying and they have grounds to not have to pay under a license because the patent's invalid or unenforceable or is not being infringed to force them to take the step of breaching and being subject to suit. They can go ahead and file a declaratory judgment. How far along has this case gotten? Because if we say no subject matter jurisdiction, we unravel everything that's already occurred and then it just gets filed in state court and starts all over again. So how far down the process has that gotten? We are in the process of having conducted some discovery. Claim construction briefing is done. There is no claim construction order. Well, the infringement suit could never be kicked to state court. You just have to refile that in federal court so you can pick back up where you are now. Right, right. No, I understand that. I mean, in terms of the trade secret portion of the case, there's been discovery. You know, it's interesting in that when we go back to some of these other subject matter jurisdiction cases where the court has held no subject matter jurisdiction, the fact that the case had progressed fairly far along... No, I get it. It's binary. I don't get to choose to keep it because it's already done. I understand how it works. Don't worry. I'm just curious what the status of it is. That's the status. Thank you, Mr. Arnett. Let's hear from Ms. Whitley. Thank you, Your Honor. The court should affirm the district court's ruling on subject matter jurisdiction in this case because this was a facial challenge. That meant that the district court needed to only look at the allegations in the complaint, take them as true, and then say, is there a justiciable controversy? What's happened during the briefing in this appeal is that the defendants have honed in and focused on one sentence in a 25-page complaint, and then they're holding up that sentence and they're saying, this sentence doesn't say that there's an actual controversy about inventorship. Why don't you tell me what facts you've alleged that create a controversy over an inventorship in the complaint? There are about six different things. Okay, show me exactly line by line. I've got the complaint right here in front of me. Well, the bigger picture is, and that's one of the things, is that ... I don't want the bigger picture. I want you to show me with particularity the lines in the complaint that you believe articulate facts creating an inventorship dispute. Paragraph 44. Okay. Line five. Injury in fact is our test. Having briefed the ... Having printed the patent release, what he said, what David Gilman said Hold on. I'm on plaintiff's first amended complaint, and paragraph 44 is from at least December 14th, 2011. I'm on the original complaint, Your Honor. Okay. Well, the first amended complaint is the only complaint that still exists. The other one is dead. So, can you get the first amended complaint? I don't have yet, but ... You don't have it? The original complaint is irrelevant at this point. It's been superseded by the amended complaint. Your Honor, with all due respect, it has been superseded, but the issue was whether or not there was jurisdiction at the beginning of the complaint whenever the original complaint was filed. This is the paragraph that is ... What page in the appendix can I find the one that you're referring to then? I apologize, Your Honor. I'm sorry for the mix up. It's 80. But this is going to be, he wrote the patent, it's on his computer, works to that effect, right? No, Your Honor. It's the next line. I'm sorry. I'm waiting for ... I got it. Okay. Okay. It says that he destroyed further negotiations of the potential investor's investment into Stone Eagle. So, we're looking for an injury in fact. What the injury in fact was is that he destroyed the negotiations ... What does that have to do with whether or not he's claiming he's an inventor? It has to do with whether or not there's an injury in fact. I don't care whether there's an injury. What I want to know is whether there's an inventorship dispute. Right. And it says, he said, I authored it. I wrote it. I've made it mine when I've produced those words to writing on my computer. It also says, if you look further down the page ... Well, actually what it says is Gilman suddenly and falsely claimed it is his patent, that he wrote the patent, and it is on his computer, that he authored it or wrote it or works to that effect. Is there more other than that? That he said? That is alleged in the complaint. There is. There is. The whole complaint goes to this issue. But paragraph 40 ... On what issue, though, that everything can be seen as an ownership dispute, which is a state court matter, where is the inventorship dispute? Authorship doesn't have anything to do with ownership, Your Honor. And as Judge Moore pointed out ... It also doesn't have anything to do with inventorship. Well, I would say that you could ... there could be ... Very few inventors have ever authored their own patent. I understand that. But saying that I wrote it, it's on my computer, it's mine ... Where does he say it's mine? I don't see that. He's suddenly and falsely claimed it is his patent, but he does, in fact, at this point in time, at that moment, have an ownership percentage of the patent, correct? He doesn't. No, Your Honor. He doesn't. At that point in time, is he not alleging he has an ownership interest in the patent at that point in time? We think he was alleging ownership and inventorship, which is why we filed this case. But if he did say it is mine, isn't that still a question of ownership, not inventorship? Well, I think that depends on what he meant. And the issue is whether or not we can look now and have the defendants re-characterize what he meant in order to avoid a contempt proceeding, which is what was going on when the motion for dismissal was filed, or whether we have to take the complaint in the light most favorable to the pleader, which is what the seizure does on a facial attack. It's not a question of what he meant. Isn't it a question of what he alleged in the complaint? No, what we alleged. Okay, well, what you alleged. Right, yes, Your Honor. And what we allege is that these statements were an injury to Stone Eagle, that these statements raised an issue of inventorship, that's in paragraph 47 that's further down the page, that he was disparaging the inventorship of Stone Eagle currently, that's paragraph 48, which had already been prevented for attracting investors or potential investors in its business and has impeded its value of the patent. So the question was, that was given to Mr. Arnett, what is the standard? The standard isn't FINA oil, the standard is metamine. And that, in this court, has said in PRASCO, that means you've got to have an injury in fact. We have an injury in fact. We lost an investor. We can't get more. We have an injury that's traceable to the defendant. It's traceable to what David Gilman said on August 31st. It has to be redressable by a favorable judgment from this court. It has been redressed by a favorable judgment from the district court. The district court said, Bobby Allen is the inventor and Stone Eagle is the owner. So the harm that was alleged has already been addressed because Stone Eagle has obtained a summary judgment. And that is metamine. So what we're saying is that when you're looking at a facial attack, that you can't go back as the defendant and try to characterize, you need to look at the complaint and you need to look at the whole complaint. What Stone Eagle found out, whenever David Gilman said those words, was that something they didn't know. That even though they were working with his companies, T3, that his companies were plotting to go out and launch a competing business. So when David Gilman came in and said that, he meant to create uncertainty about that patent by claiming either ownership or inventorship. But whatever it was, he was trying to impugn Stone Eagle's right to be the inventor. And so Stone Eagle needs to come to the district court and say, you've got to settle this because we have a lot of money at stake. We've spent years and years putting money into this patent and now we have someone chasing off our investors by claiming that he wrote it, it's on his computer, and it's his. So what we're saying is that the standard is metamine, that we have met that standard by showing an actual injury traceable to David Gilman, that if you look at the entire complaint and the additional allegations, not just what he said, but that he knew that the patent or that the potential investor placed a lot of emphasis on the patent and a lot of value on the patent, when you look at the fact that his claims destroyed the negotiations, you'll see that that's the kind of injury they were talking about in metamine. But that injury would be caused by his asserting ownership as well, right? Well, not necessarily, but certainly inventorship. Because we want to go out and market ourselves as the inventors of a new technology in a very close-knit field. And so even just saying that he was the inventor, without having any ownership... But he didn't say that, did he? He did not say, I am the inventor. He didn't say, I sat down and conceived of the idea and then put it into a patent application and took it to the USPTO. But people don't talk like that when they're having emotional outbursts. He said, I wrote it, as you pointed out, Judge Moore, that a person who wrote the patent is either usually the inventor, acting pro se, or someone who's hired to do that. And he was not hired to be a scrivener. And nobody ever said that he was being a scrivener. He was trying to say that I made this mine when I reduced it to rubble. Technically, those are the people who can go to the patent office and file the application. Anyone can help write it. Right. But that's not what the complaint says. It doesn't say that he helped write it. And there's been some discussion in the briefs that say that David Gilman helped write it. But that's not what happened. It says right before the patent was filed that Bobby Allen sent David Gilman a copy and that he made a couple of minor revisions. And that's it. That is completely inconsistent with, I wrote it, to say that he made a couple of minor revisions. And so when you look at the complaint as a whole in a facial attack, you're not reading it to see if you can undermine what is said to create a justiciable controversy. You're reading it as a notice pleading and in the light that's most favorable to the claim. The problem is most favorable to you, I wrote it, isn't I invented it. No matter how favorable I want to be to you, I wrote it is never I invented it. But people don't usually talk, I invented the invention, I conceived of it, that's not necessarily what someone would say. I mean, it's just not, it doesn't roll off the tongue. Like someone who's having an emotional outburst and saying it's mine. He was trying to undermine Stone Eagle's rights in that patent in front of that inventor. Right. Their ownership. Right. I agree with you. He was trying to undermine it. He was injuring you. You got me on all that. The problem is he wasn't doing it by virtue of claiming to have invented it because who the heck cares? He was doing it by virtue of claiming he owned it. Because if he owns the patents, people, why are they going to be as likely to invest in you because he owns the property rights? I mean, look at all of the articles about how valuable patent rights are. And if he's the person who owns them, he's the company, he's the individual with the value that maybe investors should be pursuing. Right. Except for that he added that he authored it, it's mine. But that doesn't make anything do with inventorship. It doesn't make anything do with ownership. And so I'm saying. Exactly. It doesn't have anything to do with either. It doesn't help you on either. So. Our problem. You're right. I agree with you. That doesn't do with ownership. Our problem was twofold. We had a person who had signed away his ownership rights to the patent claiming that it was his, claiming that he wrote it, that it was on his computer and trying to make that investor think that he was giving money to the wrong person. We needed both aspects of that summary judgment. That's sounding a lot more like a business tort, which, again, belongs in state court. But is there anything under the Patent Act at the time this was filed? That goes to Section 256? All your talks about injury are business torts. Is there anything that goes to the Patent Act in this original complaint? Yes. When you say a business tort, you're talking about whether or not we can go back and say we lost millions of dollars. David Gilman, you owe us that money that we lost. You attacked your reputation or misrepresented or fraudulently. Exactly. So Neagle doesn't want that. That won't do us any good. What we want is to be able to attract new investors. So we need a judgment from a court, a competent jurisdiction that says we, that Bobby Allen is the inventor and that we are the owner. We need both. In order to be able to do that. So when we look and we say we have a contract that says ownership, we need, there's got to be something more and that's the inventorship. That we have to settle that once and for all. Won't your infringement suit do that? It does now. With the time that this occurs. As Judge Moore points out, it may have to be refiled, but won't it accomplish all that you wish? No. We need the inventorship. Oh, no, Your Honor. No. It will not. We have to settle the inventorship because that's the two aspects of the patent. One is you own it. The other is. So you will file your infringement claim and if they respond that it does not, they defend by saying it does not list all the proper inventors, then you will dispose of that issue, right? It would be decided in that case, but we don't have that. We've already got a judgment that says that Bobby Allen is the inventor. So we don't need to cross that bridge because we have a judgment in this case that says that. And so going back and doing it in the infringement context would be different. If they didn't raise it, then it wouldn't. If they didn't say that he was. But no matter what we do today, you are free to claim he's the inventor because they're going to be judicially stopped from arguing anything to the contrary. They have admitted he's the inventor. They've stipulated to his inventorship. So even if you lose today on subject matter jurisdiction, you can just bring your whole case in state court and you have no fear of concern over inventorship. I don't understand. Well, we did have a problem when we filed the case and that is we wanted that inventorship aspect of it. If we filed it in state court, it could be removed. But the good news to you is it's resolved. Either way, whether you win today or lose today, your inventorship issue is resolved. It is not resolved in the way that we want by having to go to an inventor with a transcript from the hearing that day and say, you see what happened here? Whereas we have a judgment that we can go, we can say, you see what happened here? There's a big difference. If we're talking about millions of dollars and we want this investor to come on board with us, saying something that happened in a transcript that is hard for someone who wasn't there to understand what was exactly going on, it's going to be a lot more difficult. The question is, can you read this? Can you read what happened broadly enough to say that there's an inventorship claim? And if you can, and then we have satisfied the metamune test, then we need to be right where we are today, which is in this court, saying, please uphold our injunction so we can go back to the district court and enforce it. And your question earlier was how long is this or what's going on in this case? This case has been highly litigated for more than two years in federal court. And I know that doesn't mean anything if you're talking about a can't waive subject matter jurisdiction. But as far as what was happening at that time, these allegations are consistent with our claim, especially where we say that he was raising an issue as to inventorship. Those are consistent with our claim. And so we're asking that the court uphold subject matter jurisdiction. We're also asking the court to dismiss the case for lack of appellate jurisdiction. Thank you. Thank you very much. Mr. Arnett? Thank you, Your Honor. Just a couple of points on the metamunes. Hasn't your client conceded the inventorship issue? Has he conceded? He's conceded that he's not an inventor, yes. OK. Do we need to know anything more? No. OK. I mean, I think for purposes of the issue that we've been talking about, the answer is no. I think that for purposes of... Thank you. Do you have anything else? No, sir. Thank you, Mr. Arnett.